Magistrate Judge Michelle L. Peterson

___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

NOV 27 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROSALIANA LOPEZ-RODRIGUEZ,<br><br>Defendant. | NO. MJ19-575<br><br>COMPLAINT FOR VIOLATION<br><br>21 U.S.C. § 841(a) and 841(b)(1)(c) |

BEFORE the Honorable Michelle L. Peterson, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

### COUNT 1
**(Possession of Fentanyl with Intent to Distribute)**

On or about November 27, 2019, in Mount Vernon, within the Western District of Washington, and elsewhere, the defendant, ROSALIANA LOPEZ-RODRIGUEZ did knowingly and intentionally possess, with intent to distribute, N-phenyl-N-[1-(2 phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance under Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

COMPLAINT/LOPEZ-RODRIGUEZ - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

This Complaint is based upon the following information:

I, Christopher VandenBos, a Task Force Officer (TFO) with the Drug Enforcement Agency (DEA), having been duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). Specifically, I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), assigned to the Bellingham, Washington Resident Office. In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, *et seq.*). I have been assigned as a Task Force Officer with the DEA since January 2019. Prior to becoming a Task Force Officer, I was a Deputy with the Whatcom County Sheriff's Office in Washington. I received my Washington State law enforcement commission in 2015. In my experience as a law enforcement officer, I have participated in numerous narcotics investigations, during the course of which I have participated in physical surveillance, interviews, and executions of state and federal search warrants. As a law enforcement officer, I have participated in both death and homicide investigations.

2. I have completed the Undercover Techniques and Survival for Narcotics Officers School hosted by the Western Regional Counterdrug Training Center, as well as other training courses related to gangs and narcotics trafficking. I have participated in narcotics investigations at both the local and federal level, and I have participated in the execution of federal search warrants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Task Force Officer with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of cocaine, methamphetamine, heroin, fentanyl, marijuana and other dangerous drug organizations.

3. I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug

smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. I have discussed and learned from other law enforcement investigators in regards to these matters as well.

4. Based on my training, experience, and conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of said activity.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. My specialized training and experience, as well as the assistance and input of experienced fellow investigators, in drug investigations form a basis for my opinions and conclusions, which I drew from the facts set forth herein.

## SOURCES OF INFORMATION

6. I make this Affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from various sources, including:

    a. My training and experience investigating drug trafficking and related criminal activity, as described above;

    b. Oral and written reports and documents about this and other investigations that I have obtained from agents of the DEA and the Whatcom County Sherriff's Office (WCSO), and other federal, state and local law enforcement agencies;

    c. Physical surveillance conducted by the aforementioned agencies, and other law enforcement agencies, that has been reported to me directly or indirectly;

    d. Telephone toll records, pen register and trap and trace information, and subscriber information;

    e. Washington State Department of Licensing records;

   f. Commercial Databases;

   g. Public records; and

   h. Publicly viewable information on social media websites (*e.g.*, Facebook, Instagram).

 7. Since this Affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for a fair determination of probable cause to support the Complaint.

 8. In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect the specific words or language used.

## STATEMENT OF PROBABLE CAUSE

**A. A Citizen Informant's Tip on "Rosie"**

 9. In the fall of 2019, a citizen contacted the Sedro Woolley Police with information about an individual named "Rosie" who he/she said was selling "Perc 30s" that were laced with fentanyl. Investigators subsequently learned the identity of the citizen informant. According to a law enforcement database, the citizen informant has a gross misdemeanor conviction for a controlled substance violation in the early 2010s and a misdemeanor DUI conviction in 2018.

 10. The citizen informant provided the following information to the Sedro Woolley Police regarding "Rosie":

  a. The citizen informant had purchased pills from "Rosie" and overdosed at least twice after using the pills from "Rosie." The citizen informant was upset that he/she overdosed on the pills provided by "Rosie," which prompted him/her to provide information about "Rosie" to the Sedro Woolley Police.

  b. The citizen informant initially provided 360-540-8464 as the phone number for "Rosie" and said that "Rosie" lives on "16th" in Mount Vernon, Washington. The citizen informant later communicated with the Sedro Woolley Police officer and provided 360-982-9395 as the new contact number for "Rosie." According to the citizen informant, "Rosie" had reached out to him/her and provided the new number.

  d. The citizen informant would usually meet "Rosie" at Rosie's house to buy pills. "Rosie" would come out of the house, walk to the citizen informant's car, and sell pills to the citizen informant while the citizen informant was seated inside the car.

  e. The citizen informant did not know how many pills that "Rosie" was selling but knew that "Rosie" sold the pills unwrapped and always had a bundle of cash. The citizen informant noted that Rosie's girlfriend was aware of her drug dealing but the girlfriend did not sell drugs.

 11. Utilizing the information provided by the citizen informant, the Sedro Woolley PD located the citizen informant's social media accounts. Through the citizen informant's social media accounts, the Sedro Woolley PD potentially identified "Rosie" as Rosaliana LOPEZ-RODRIGUEZ and her likely girlfriend as Olivia Estes-Chavez.

 12. The citizen informant said that he/she had not purchased pills from "Rosie" in several months. However, a review of toll records between the citizen informant's phone number and 360-982-9395—the phone number the citizen informant identified as belonging to "Rosie"—showed that the citizen informant and "Rosie" had contacted each other on approximately 221 separate occasions between October 25, 2019, and November 16, 2019.

**B.     Records Associated with LOPEZ-RODRIGUEZ's phone, 360-982-9395**

13.     On or about November 15, 2019, investigators searched a law enforcement database and found out that 360-982-9395 was being serviced by Sprint. The records obtained from Sprint showed that the listed subscriber for the phone number was "Olivia Chavez" at 522 North 16th Street, Mount Vernon, Washington. Investigators searched for and identified Instagram pages belonging to LOPEZ-RODRIGUEZ and Estes-Chavez and a Facebook page belonging to LOPEZ-RODRIGUEZ based on the fact that the individuals' pictures displayed on those pages matched the Washington driver license photos for LOPEZ-RODRIGUEZ and Estes-Chavez. All pages were open to public for viewing and displayed multiple pictures of LOPEZ-RODRIGUEZ and Estes-Chavez together. LOPEZ-RODRIGUEZ's Facebook page also indicated that she and Estes-Chavez were "in a relationship." It is common for drug traffickers to use another person's name to sign up for a cellphone service in an attempt to conceal their true identity.

**C.     Surveillance of 522 North 16th Street on November 19, 2019**

14.     On November 19, 2019, investigators established surveillance around the residence at 522 North 16th Street. While conducting surveillance, investigators saw LOPEZ-RODRIGUEZ appearing from the driveway of the residence and walking a short way down the street towards a white Toyota Camry. A female with blonde hair was sitting inside the Camry.

15.     Investigators saw LOPEZ-RODRIGUEZ getting into the passenger seat of the Camry. The Camry then drove around the block. A short time later, investigators saw LOPEZ-RODRIGUEZ getting out of the vehicle at a different location. After getting out of the vehicle, LOPEZ-RODRIGUEZ walked back toward 522 North 16th Street and then up the driveway of the residence. Because of the position of surveillance, however, investigators were unable to see LOPEZ-RODRIGUEZ entering the residence.

16.     Later the same day, investigators saw a vehicle park along the street in front of 522 North 16th Street. Soon, LOPEZ-RODRIGUEZ emerged, jogged to the end of the driveway, and approached the passenger door. LOPEZ-RODRIGUEZ then made a hand-

to-hand exchange of something with the driver. LOPEZ-RODRIGUEZ then jogged back to the driveway of the residence towards the entrance and out of sight. Investigators saw LOPEZ-RODRIGUEZ with US currency in her hand after the transaction.

17. Investigators followed the Camry to a nearby park, where the driver parked the vehicle. Investigators then made contact with the driver, who was the lone occupant of the vehicle. The driver was identified as someone who had been a target of a narcotics investigation conducted by the Skagit County Inter-local Drug Enforcement Unit, in which the Unit's confidential informant had bought drugs from the individual on three separate occasions.

18. The driver was subsequently arrested by investigators. Inside the vehicle was a pill in plain view. The driver was read the *Miranda* rights, which he/she waived. The driver also gave the investigators consent to search his/her vehicle. Prior to the search, the driver admitted that there was a "Perc 30" pill in the vehicle and a methamphetamine pipe.

19. Investigators located a pill that was round, light blue in color, and stamped with the letter "M" within a box on one side, and with the number "30" on the other side. I know, based on my training and experience, that these "M 30" pills are likely to be counterfeit pills that are designed to look like 30mg Oxycodone HCl 30 mg pills but actually contain fentanyl and/or fentanyl analogues and have been located throughout Whatcom and Skagit County in recent months. Numerous overdose deaths around the country have been attributed to these types of counterfeit pills, including several in Western Washington in recent months.

20. The driver was then transported to the Mount Vernon Police Department for interview. Investigators interviewed the driver at the Mount Vernon Police Department. The driver (hereinafter the "Confidential Source") agreed to cooperate with law enforcement in exchange for consideration regarding the three previous controlled buys and the instant offense.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

21. The Confidential Source told investigators that he/she had bought the "M 30" pill from a female named "Rosie." When shown a driver license photo of LOPEZ-RODRIGUEZ, the Confidential Source confirmed LOPEZ-RODRIGUEZ as "Rosie." The Confidential Source further told investigators that LOPEZ-RODRIGUEZ lives with her girlfriend "Olivia," but LOPEZ-RODRIGUEZ is the only person dealing "M 30" pills.

22. The Confidential Source consented to a search of his/her cellular phone. Investigators observed a contact under the name "Rosie" with the cell phone number 360-982-9395. The cellphone contained multiple text messages between the Confidential Source and LOPEZ-RODRIGUEZ arranging the deal that investigators believe they saw during surveillance.

23. The Confidential Source has two drug-related felony convictions from over 15 years ago. The Confidential Source also has three non-drug, non-crime-of-dishonesty gross misdemeanor convictions from the 90s. The Confidential Source has two driving-related simple misdemeanor convictions and one additional non-drug, non-crime-of-dishonesty simple misdemeanor between 1993 and 2011. An NCIC check showed that the Confidential Source also has an active Washington state felony warrant for possession of a controlled substance without a prescription.

D. **Search of LOPEZ-RODRIGUEZ's Residence**

24. On November 21, 2019, investigators obtained a federal search warrant for the residence at 522 North 16th Street, Mount Vernon, WA. On November 27, 2019, investigators executed the search warrant for the residence at 522 North 16th Street, Mount Vernon, WA.

25. LOPEZ-RODRIGUEZ, who was present at the residence, was interviewed by the investigators. Investigators read her Miranda rights, which she waived. She then told the investigators that there were "M 30" pills in her bedroom, that those pills were hers, and that she distributed those "M 30" pills for money knowing that they contained fentanyl.

26. Investigators subsequently searched LOPEZ-RODRIGUEZ's bedroom and found approximately two and a half "M 30" pills that were consistent in appearance with the "M 30" pill they had seized from the Confidential Source.

## CONCLUSION

27. Based on the above-described facts, I respectfully submit that there is probable cause to believe that ROSALIANA LOPEZ-RODRIGUEZ committed the offenses set forth in this Complaint.

*[signature]*

CHRISTOPHER VANDENBOS
DEA, TFO

Dated this 27th day of November, 2019, at Seattle, Washington.

*[signature]*

MICHELLE L. PETERSON
United States Magistrate Judge